*Formatted for Electronic Distribution*                                    *Not for Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

Filed & Entered
On Docket
February 18, 2011

_____

In re:

    **Justin E. Bosley and**             **Chapter 13 Case**
    **Patricia E. Bosley,**             **# 09-10449**
               **Debtors.**

_____

**Justin & Patricia E. Bosley and**
**Jan M. Sensenich,**
               **Plaintiffs,**
    **v.**                      **Adversary Proceeding**
**BAC Home Loan Servicing L.P.**        **# 09-1038**
**f/k/a Countrywide Home Loans Servicing LP,**
               **Defendant.**

_____

*Appearances:*     *Todd Taylor, Esq.*            *Douglas J. Wolinsky, Esq.*
              *For Justin & Patricia E. Bosley.*   *Kevin Michael Henry, Esq.*
                                      *Shawn Michael Masterson, Esq.*
              *Jan M. Sensenich, Esq.*       *For BAC Home Loan Servicing L.P.*
              *Chapter 13 Trustee*         *f/k/a Countrywide Home Loans*
                                          *Servicing LP*

## MEMORANDUM OF DECISION
GRANTING SUMMARY JUDGMENT TO THE DEBTORS ON THE ISSUE OF EQUITABLE SUBROGATION,
DENYING THE DEBTORS' REQUEST FOR ATTORNEY'S FEES AND COSTS,
SETTING BRIEFING SCHEDULE AND ORAL ARGUMENT ON INQUIRY NOTICE ISSUE,
AND DEFERRING DECISION ON REMAINING SUMMARY JUDGMENT ISSUES

      The Plaintiffs filed the instant adversary proceeding seeking an order declaring that, because the

unrecorded mortgage on the Debtors' real property was unperfected, it is avoidable and does not

constitute a valid lien.[1]   The Defendant filed an amended answer seeking an order declaring that the

mortgage is valid and enforceable and raising the affirmative defense of equitable subrogation.  The

Debtors and the Defendant have filed cross-motions for summary judgment as to whether the Defendant

is entitled to equitable subrogation and whether the Chapter 13 Trustee may avoid the mortgage.  The

Debtors also seek summary judgment as to whether, if the lien is avoidable, the general unsecured

---

[1]  Though captioned as the Plaintiffs' motion for summary judgment, the motion was filed and signed solely by counsel for the Debtors (see doc. # 21); the Chapter 13 Trustee has not filed any pleadings in this adversary proceeding.

creditors are entitled to receive the entire amount of the avoided lien, and request an award of attorney's fees and costs.

For the reasons set forth below, the Court finds that the Debtors are entitled to judgment as a matter of law that the principle of equitable subrogation does not apply to the Defendant's unrecorded mortgage, and that the record is insufficient for the Court to determine if the unrecorded mortgage is avoidable. Therefore, the Court first grants the Debtors' motion for summary judgment and denies the Defendant's cross-motion for summary judgment on the issue of equitable subrogation. Second, the Court defers a ruling on the issue of whether the unrecorded mortgage may be avoided until the parties supplement the record as described below, and will address the question of whether the general unsecured creditors must be paid the entire amount of the lien after it determines if the Trustee may avoid it. Lastly, the Court denies the Debtors' request for an award of attorney's fees and costs.

**JURISDICTION**

This Court has jurisdiction over this adversary proceeding and the instant motions for summary judgment pursuant to 28 U.S.C. §§ 157 and 1334 and declares them to be core proceedings under 28 U.S.C. § 157(b)(2)(K).

**PROCEDURAL HISTORY**

On April 20, 2009, Justin and Patricia E. Bosley (the "Debtors") filed a voluntary Chapter 13 petition. The Debtors and Jan M. Sensenich, the Chapter 13 Trustee (the "Trustee") (collectively, the "Plaintiffs") filed a complaint to initiate this adversary proceeding on November 1, 2009 (doc. # 1). BAC Home Loans Servicing LP f/k/a Countrywide Home Loans Servicing LP (the "Defendant") filed an answer on December 1, 2009 (doc. # 3), and filed an amended answer on April 9, 2010 (doc. # 11). The Debtors, the Trustee, and the Defendant filed a stipulated joint pre-trial statement on July 21, 2010 (doc. # 17), including a joint statement of undisputed facts. The Debtors filed a motion for summary judgment on September 26, 2010 (doc. # 21), and the Defendant filed its opposition and cross-motion for summary judgment on October 25, 2010 (doc. # 22).

**UNDISPUTED MATERIAL FACTS**

Based upon the parties' stipulation of undisputed facts (doc. # 17, pp. 2–3) and the record in this proceeding, the Court finds the following facts to be material and undisputed:

1.      The Debtors are the owners of real property located at 299 West Berkshire Road, Enosburg, Vermont (the "Property").

2.      On May 4, 2004, the Debtors executed and delivered to CitiFinancial, Inc., a mortgage deed to the Property to secure a debt in the amount of $110,109.33 (the "CitiFinancial loan"). The mortgage deed was recorded on May 7, 2004, in the Town of Enosburg Land Records.

2

3.     On June 4, 2006, the Debtors entered into two mortgage loans with Countrywide Home Loans

("Countrywide").  The first loan was in the amount of $112,000, and the second loan was in the

amount of $21,000.  Each of the loans was secured by a separate mortgage deed to the Property.

4.     Approximately $109,617 of the proceeds of the $112,000 Countrywide loan was used to pay the

balance due on CitiFinancial loan.

5.     On June 30, 2006, the Countrywide mortgage deed securing the $21,000 loan was recorded in

the Town of Enosburg Land Records.

6.     On November 17, 2006, the Debtors executed and delivered to Vermont Community Loan Fund

("VCLF") a mortgage deed, which included the following language:

> [t]his is a third (3rd) mortgage and is subordinate to prior liens to Country Wide
> [sic] Home Loans, in the original amounts of $112,000 and $21,000 respectively,
> dated June 14, 2006 and recorded in Book 107 Pages 545–549 of the Town of
> Enosburg Land Records.

7.     On November 22, 2006, the VCLF mortgage deed was recorded in the Town of Enosburg Land

Records.

8.     On October 2, 2008, the VCLF recorded a discharge of its mortgage deed.

9.     On April 20, 2009, the Debtors filed the instant bankruptcy case.

10.    As of the bankruptcy filing date, the mortgage deed securing the $112,000 Countrywide loan had

not been recorded.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the record shows no genuine issue as to any material fact such

that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56; Fed. R. Bankr.

P. 7056; see also Bronx Household of Faith v. Bd. of Educ. of the City of New York, 492 F.3d 89, 96

(2d Cir. 2007).  The moving party bears the burden of showing that no genuine issue of material fact

exists.  See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  A

genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a

verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The substantive law identifies those facts that are

material; only disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment.  See Anderson, 477 U.S. at 248.  Factual disputes that

are irrelevant or unnecessary are not material.  Id.  In making its determination, the court's sole function

is to determine whether there is any material dispute of fact that requires a trial.  Id. at 249; see also

Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir. 2004).  In determining whether there is a genuine issue of

material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party.

See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 579

(2d Cir 2006).  If the nonmoving party does not come forward with specific facts to establish an

essential element of that party's claim on which it has the burden of proof at trial, the moving party is

entitled to summary judgment.  See Celotex Corp., 477 U.S. at 323–25 ("One of the principal purposes

of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . .

the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district

court – that there is an absence of evidence to support the nonmoving party's case"); see also Tufariello

v. Long Island R. Co., 458 F.3d 80, 85 (2d Cir. 2006).

DISCUSSION

The parties seek summary judgment on three issues: 1) whether the Defendant is entitled to

equitable subrogation; 2) whether the Chapter 13 Trustee may avoid the mortgage; and 3) whether, if the

lien is avoidable, the general unsecured creditors are entitled to receive a sum equal to the entire amount

of the avoided lien.

1.  <em>Equitable Subrogation</em>

None of the material facts regarding the equitable subrogation claim are in dispute.  Therefore,

summary judgment is proper on this issue.

The Defendant argues that it is entitled to be equitably subrogated to the CitiFinancial mortgage

because a portion of the proceeds of Countrywide's $112,000 loan were used to satisfy the outstanding

CitiFinancial loan (see Undisputed Material Facts ¶ 4, supra).  The Debtors counter that, as a matter of

law, they are entitled to a judgment declaring that the principle of equitable subrogation does not cure

the Defendant's failure to record its mortgage deed.  The Debtors are correct.

This Court has previously explained the circumstances under which the principle of equitable

subrogation applies:

> Equitable subrogation arises in equity to prevent fraud or injustice and usually arises
> when (1) the paying party has a liability, claim or fiduciary relationship with the debtor;
> (2) the party pays to fulfill a legal duty or because of public policy; (3) the paying party is
> a secondary debtor; (4) the paying party is a surety; or (5) the party pays to protect its
> own rights or property.

In re Hutchins, 400 B.R. 403, 413 (Bankr. D. Vt. 2009) (quoting Lawlor v. Chittenden Trust Co. (In re

Lawlor), 2005 Bankr. LEXIS 2935, 2005 WL 4122833, *2 (Bankr. D. Vt. Dec. 15, 2005)).  "This

equitable doctrine, which has as its goal the advancement of justice and the prevention of injustice, is

used 'only in extreme cases bordering on if not reaching the level of fraud.'"  Id. (citing Rouse v. Chase

Manhattan Bank, U.S.A. (In re Brown), 226 B.R. 39, 44 (W.D.Mo. 1998)).    In its earlier ruling, the

Court specifically addressed the purpose equitable subrogation is intended to serve:

> Subrogation is an equity called into existence for the purpose of enabling a party
> secondarily liable, but who has paid the debt, to reap the benefit of any securities or
> remedies which the creditor may hold against the principal debtor and by the use of

4

which the party paying may thus be made whole.  It is a doctrine which has particular
approval in Vermont as between insurer and insured.  Subrogation arises when one man
is compelled to pay a debt for which another is primarily liable and which, in good
conscience, should have been discharged by the latter.  Subrogation is an equity creature
akin to and derived from the law of unjust enrichment and restitution.

The general rule is that an obligor or insurer making a payment for which it is not liable
is making a 'voluntary' payment and cannot be subrogated.  Although the general rule
has not been applied specifically to insurance law by Vermont, the rule is applied in
Vermont to general equitable rights of subrogation and restitution.

It is not disputed by the parties that one is a volunteer if he pays while under no
obligation to pay or when no interest of his is protected by payment.  The problem
presented is determining what is a 'volunteer' in any particular factual situation.

Equity rules are not absolute and competing equities must be considered in any
subrogation-restitution situation.  The subrogee must have clear equity and subrogation is
defeated by countervailing equities.  Subrogation will not be enforced to the prejudice of
equal or higher rights.

Id. at 414 (citation omitted).

The Defendant argues that the balance of equity favors the application of equitable subrogation

in the instant proceeding, to allow it to "stand in the shoes" of CitiFinancial because the Countrywide

loan was advanced for the explicit purpose of satisfying the CitiFinancial loan.  Therefore, it perceives

itself to have stepped in for CitiFinancial, assuming the benefit of CitiFinancial's secured position.

However, this argument fails to take into account the crucial fact that Countrywide made the $112,000

loan voluntarily in reliance upon its own mortgage deed.  See Undisputed Material Facts ¶ 3, supra; see

also Lawlor, 2005 Bankr. LEXIS 2935 at *10, 2005 WL 4122833 at *3.  The fact that Countrywide (and

the Defendant) failed to record the mortgage deed does not transform the voluntary $112,000 loan into

an involuntary one, or in any other way invoke application of equitable subrogation rights.  The Court

finds that under the instant undisputed material facts, the Defendant is not entitled to be equitably

subrogated to Citifinancial's secured position.

Accordingly, the Court grants the Debtors' motion for summary judgment on the issue of

equitable subrogation, and denies the Defendant's cross-motion for summary judgment on that issue.

### 2.   *Avoidance of the Defendant's Unrecorded Mortgage*

The Debtors assert that they are entitled to judgment as a matter of law on their claim that the

Defendant's failure to record the mortgage deed securing the June 4, 2006 loan in the amount of

$112,000 resulted in a lack of notice of the Countrywide mortgage deed, and thus that the Trustee has

the status of a bona fide purchaser without notice and may avoid the unrecorded mortgage lien under 11

U.S.C. § 544(a)(3).[2]  The Defendant counters that the Trustee had constructive notice of Countrywide's

---

[2]  All statutory citations refer to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise indicated.

unrecorded $112,000 mortgage deed because that mortgage deed was referenced in the VCLF mortgage deed and the VCLF mortgage deed was of record on the date the Debtors filed their bankruptcy petition. Based upon the unequivocal reference to the Countrywide mortgage deed in the VCLF deed, the Defendant insists that the Trustee had sufficient notice to be precluded from avoiding Countrywide's unrecorded mortgage deed under § 544(a)(3). As explained below, while none of the facts that the parties identify as material to this issue are in dispute, the record is insufficient with respect to the law for the Court to determine if either party is entitled to judgment.

The Bankruptcy Code provides that a trustee may "avoid an obligation if a hypothetical purchaser, buying at the time the bankruptcy proceedings are initiated, would also be able to avoid the obligation." Mortgage Lenders Network, USA v. Sensenich (In re Potter), 313 F.3d 93, 95 (2d Cir. 2002). The pertinent statute states, in relevant part, that:

> (a)      The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> . . .
>
> (3)      a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such purchaser exists.

11 U.S.C. § 544(a)(3). Section 544(a) gives a trustee the rights of a creditor on a simple contract, with a judicial lien on a debtor's property as of the petition date. In re Davis, 109 B.R. 633, 637 (Bankr. D. Vt. 1989) (Conrad, J.).

"State law defines the nature and extent of a debtor's property and therefore the bankruptcy estate's interest in the property." Id. (citing Butner v. U.S., 440 U.S. 48, 49 (1979)). The salient question before the Court is thus whether Countrywide's unrecorded mortgage deed would be valid under Vermont law. It is clear that Vermont law requires mortgage deeds to be recorded:

> [d]eeds and other conveyances of lands . . .  shall be signed by the party granting the same and acknowledged by the grantor before a town clerk, notary public, master, county clerk, or judge or register of probate and recorded at length in the clerk's office of the town in which such lands lie.

27 V.S.A. § 341(a). In addition, Vermont law provides that:

> a mortgage or other conveyance of land . . . shall not be effectual to hold such lands against any person but the grantor and his heirs, unless the deed or other conveyance is . . .  recorded.

27 V.S.A. § 342.

Under Vermont law, however, there is a "constructive notice" exception to the general rule that a mortgage deed must be recorded to be valid: the mortgage deed is valid as against a bona fide purchaser with constructive notice of the lien, even if it has not been recorded.  LaDouceur v. Key Bank, N.A. (In re LaDouceur), 1999 Bankr. LEXIS 504, *10, 1999 WL 286436, *3 (Bankr. D. Vt. Apr. 22, 1999) (Conrad, J.) (citing Haner v. Bruce, 146 Vt. 262, 499 A.2d 792 (Vt. 1985); Allen v. Gates, 73 Vt. 222, 50 A. 1092 (Vt. 1900)).  This raises the issue of what constitutes constructive notice.  The Vermont courts have described constructive notice as

> a postural rule of State law that permits a prior purchaser to gain priority over a
> latter purchaser, regardless of whether the latter purchaser actually knows of the
> prior purchase . . ..  'Inquiry notice' is a form of constructive notice.  It follows
> from the duty of a purchaser when he has 'actual' or 'constructive' notice of facts
> that would lead a reasonably prudent person to suspect that another person might
> have an interest in the property to conduct a further investigation into the facts.

Davis, 109 B.R. at 639.  The Vermont Supreme Court has elucidated the meaning of inquiry notice as follows:

> [T]he courts of equity are vigilant . . . to see that [a] purchaser shall not be allowed
> to take any benefit resulting from any want of care and watchfulness.  If there exist
> any circumstance of suspicion, whereby he might be said to be fairly put upon his
> guard, and he neglects to follow out the inquiry, he is affected with notice of all
> facts, which such inquiry would have brought to his knowledge, and if he purchases
> with his eyes shut, he acquires only the title of his grantor impeded with its
> attendant equity.
>
> Hart v. Farmers' & Mechanics' Bank, 33 Vt. 252, 264–65 (1860).  This principle
> has been continually reaffirmed in Vermont and elsewhere.  See, e.g., Tomasi v.
> Kelley, 100 Vt. 318, 323, 137 A. 196, 198-99 (1927) ("The circumstances being
> such as then to put defendant upon inquiry, he is chargeable with notice of all such
> facts as his inquiry, had it been made, would have revealed."); In re Ryan, 851 F.2d
> 502, 507 (1st Cir. 1988) ("Inquiry notice follows from the duty of a purchaser,
> when he has actual or constructive knowledge of facts which would lead a prudent
> person to suspect that another person might have an interest in the property, to
> conduct a further investigation into the facts."); Methonen v. Stone, 941 P.2d 1248,
> 1252 (Alaska 1997) ("It is well established that a purchaser will be charged with
> notice of [an] interest adverse to his title when he is aware of facts which would
> lead a reasonably prudent person to a course of investigation which, properly
> executed, would lead to knowledge of the servitude."); Hall v. Allen, 771 S.W.2d
> 50, 53 (Mo. 1989) (en banc) (purchaser of real estate is charged with notice of
> easement where existence of servitude is apparent upon ordinary inspection of
> premises).

Richart v. Jackson, 171 Vt. 94, 97–98, 958 A.2d 319, 321–22 (Vt. 2000).  The crucial point is that under Vermont jurisprudence, notice of an unrecorded deed is equivalent to a record of the deed as against those having such notice.  Davis, 109 B.R. at 638 (citing Corliss v. Corliss, 8 Vt. 373 (1836)).

7

"A potential purchaser is charged with knowledge that would have been revealed through a reasonably diligent inquiry." LaDouceur, 1999 Bankr. LEXIS 504 at *10–11, 1999 WL 286436 at *4 (citing Morse v. Murphy, 157 Vt. 410, 599 A.2d 1367 (1991)).  A "reasonably diligent inquiry" at the very least requires a potential purchaser to examine the record of title.  Id. at *11, 1999 WL 286436 at *4.  Section 544(a)(3) does not mitigate the trustee's duty under state law, as a hypothetical judicial lien creditor, to examine the record of title, and the trustee "may be bound by erroneous, defective or incomplete matters of record, the discovery of which would lead to further inquiry." Id. at *11–12, 1999 WL 286436 at *4 (citing In re Hagendorfer, 803 F.2d 647, 649 (11th Cir. 1986)).  "[I]f a party has 'sufficient facts concerning [another's] interest in the property to call upon him to inquire, he is charged with notice of such facts as diligent inquiry would disclose.'" Myers v. LaCasse, 2003 VT 86, *27, 176 Vt. 29, 40, 838 A.2d 50, 58 (Vt. 2003) (quoting Black River Assocs. v. Koehler, 126 Vt. 394, 399, 233 A.2d 175, 179 (Vt. 1967)).

The Defendant has conceded that the June 4, 2006 mortgage deed securing the $112,000 Countrywide loan was not recorded prior to the date the Debtors filed their Chapter 13 petition (see Undisputed Material Facts ¶¶ 3, 10, supra).  Therefore, as of the petition date the Countrywide mortgage deed was not in compliance with Vermont's state law recording requirements.  See 27 V.S.A. §§ 341(a), 342.  The issue of its validity as against the Trustee turns on whether the constructive notice exception applies here. The Trustee may not avoid the Countrywide unrecorded mortgage deed if he had constructive notice of it.  See LaDouceur, 1999 Bankr. LEXIS 504 at *10, 1999 WL 286436 at *3; see also Davis, 109 B.R. at 638.   As a hypothetical judicial lien creditor, the Trustee is charged with knowledge that would have been revealed through a reasonably diligently inquiry, including a title search.  See LaDouceur, 1999 Bankr. LEXIS 504 at *10–11, 1999 WL 286436 at *4.  Here, a title search on the Property would have revealed the VCLF mortgage deed, which was recorded in the Town of Enosburg Land Records pre-petition and referenced "prior liens to Country Wide [sic] Home Loans, in the original amounts of $112,000 and $21,000 respectively, dated June 14, 2006" (see Undisputed Material Facts ¶ 6–7, supra).  This raises two questions: 1) whether the Trustee, exercising due diligence, would have read the discharged VCLF mortgage deed and thus seen the reference to the two Countrywide mortgage deeds; and 2) if so, if that reference in the discharged VCLF mortgage deed was sufficient notice of the Defendant's interest to require the Trustee to make further inquiry.

The Supreme Court of Vermont addressed this type of notice issue in 1924  in Tindale v. Bove, 97 Vt. 465, 124 A. 585 (Vt. 1924).  There, a Mr. Bove gave a mortgage to a Mr. Gray on April 30, 1919, for property located in the towns of Sandgate and Rupert; the mortgage was defectively executed and not entitled to registration.  Id. at 467, 124 A. at 585.  The plaintiff brought an action to set aside as fraudulent conveyances the June 3, 1920 conveyance by Mr. Bove of the same parcel to a Mr. Ricci and

the subsequent conveyance of the property from Mr. Ricci to Mr. Bove's wife on the same date. Id. at
466–67, 124 A. at 585–86.  The issue before the court was whether the plaintiff's lien on the property,
which attached subsequent to the mortgage to Mr. Gray, was superior to Mr. Gray's mortgage lien. Id.
at 466–67, 124 A. at 585.  The court noted that the deed given by Mr. Bove to Mr. Ricci described the
land as "the same premises deeded to Peter Bove by Harry C. Gray and Maud C. Gray . . .," and that the
deed contained a covenant that the premises "are free from every encumbrance except mortgage to said
Grays." Id. at 467, 124 A. at 586.  The court further noted that the deed given by Mr. Ricci to Mrs.
Bove contained a similar description and covenant, and that both deeds were recorded in the land
records of Rupert on June 4, 1920. Id.  The Vermont Supreme Court found that when the plaintiff's
attachment was made in December 1920, the plaintiff had constructive notice of the fact, shown by both
deeds, that the land situated in Rupert was encumbered by a mortgage to "said Grays." Id. at 468, 124
A. at 586.  The court further found that the plaintiff had constructive notice and imputed knowledge of
the Gray mortgage sufficient to put him on inquiry concerning it, and was chargeable with notice of its
contents, and held that the plaintiff's attachment was subordinate to the Grays' mortgage lien. Id.

       Based upon the Vermont Supreme Court's clear ruling in Tindale, if the VCLF mortgage deed
had been of record on the date of the filing, the Trustee would have been bound to make inquiry as to its
contents, would have been on constructive notice of Countrywide's $112,000 mortgage deed, even
though it was not recorded, and would be precluded from avoiding it.  However, the facts in this case are
distinguishable from the facts of Tindale in a critical respect: VCLF discharged its mortgage deed
several months prior to the filing of the Debtors' bankruptcy petition (see Undisputed Material Facts ¶¶
8–9, supra).  The parties have not cited, and the Court has not found, any case that resolves the issue of
whether a purchaser (or a trustee, as a hypothetical judicial lien creditor) is on inquiry notice of the
contents of a properly recorded mortgage deed that has been discharged prior to the date of the title
search (or the bankruptcy petition filing date).  Moreover, neither party has directed the Court's attention
to any authority establishing whether, under Vermont law, a reasonably prudent person would be
expected to review the contents of a discharged mortgage when searching the title of a parcel of real
property that person intends to purchase. These are essential to the Court's determination of whether the
Trustee was on inquiry notice of Countrywide's unrecorded mortgage deed.

       In seeking legal  authority to assess whether either party is entitled to judgment as a matter of
law, the Court reviewed the Vermont Standards of Title as adopted and revised by the Vermont Bar
Association Board of Bar Managers.  See Vermont Standards of Title (2010), available at
http://www.vermontattorneystitle.com/vermont-title-standards/vermont-title-standards-editor-s-preface/
(last visited Feb. 18, 2011; a copy of the pertinent sections as of that date is attached as an exhibit to this
memorandum of decision) ("Title Standards").  The Court finds this authority may be relevant, but at

this time makes no determination as to whether the Title Standards is persuasive authority on the inquiry notice issue, how much weight it would give the Title Standards, or whether, if the Title Standards did not require the Trustee to read the contents of the discharged VCLF mortgage, this would compel a finding that the Trustee was not on inquiry notice of Countrywide's unrecorded mortgage deed.

The Court is cognizant of the fact that a ruling on whether a party may be held to be on inquiry notice of information contained in a discharged mortgage could have a significant impact on property law and practice in Vermont. It will therefore not render a decision on the inquiry notice issue without giving the parties to this proceeding, and other parties interested in the issue, the opportunity to supplement the record with memoranda of law addressing the following four questions:

1)      under the standards established by Vermont jurisprudence, who is the "reasonably prudent person" who sets the standard for inquiry notice (e.g., a lawyer, a title examiner, a title insurer, a non-lawyer purchaser of real property);

2)      would such a reasonably prudent person be expected to read the contents of a discharged mortgage deed;

3)      what authority supports the responses to the first two questions; and

4)      is expert testimony necessary to establish the standard advocated?

The Court will set a date for the parties to present oral argument on these four questions, as well as any other salient issues they have raised in their memoranda of law.  After considering the oral arguments, if the parties wish to proceed with their summary judgment motions, the Court will determine if there are additional material facts that must be considered, whether those material facts are in dispute, and whether the record is sufficient at that time for the Court to adjudicate the issue on summary judgment.

### 3.   *Rights of General Unsecured Creditors if the Lien is Avoided*

Based upon the foregoing determinations, the Court defers decision on the issue of whether the general unsecured creditors are entitled to receive a sum equal to the entire amount of the lien until after it determines whether the Plaintiffs may avoid the unrecorded mortgage deed.

### CONCLUSION

With respect to the equitable subrogation claim, the Court grants the Debtors' motion for summary judgment and denies the Defendant's cross-motion for summary judgment.  The Court defers decision on both parties' motions for judgment on the issue of whether the Trustee may avoid the mortgage as a bona fide purchaser without notice under § 544(a)(3), and shall enter a scheduling order with respect to those issues.  The Court shall decide the Debtors' motion for summary judgment on the question of whether the general unsecured creditors are entitled to receive the entire amount of the avoided lien until after it determines if the lien is avoidable. Given the complexity of the issue presented,

and in particular the fact that this matter presents an issue of first impression with respect to inquiry

notice, the Court denies the Debtors' request for attorney's fees and costs.

This memorandum of decision constitutes the Court's findings of facts and conclusions of law.

February 18, 2011                                              Colleen A. Brown
Burlington, Vermont                                    United States Bankruptcy Judge

# VERMONT TITLE STANDARDS INDEX

| Standard | Title |
|---|---|
| 1.1 | The Role of the Examining Attorney |
| 1.2 | The Examining Attorney's Attitude |
| 1.3 | Definition of Marketable Title |
| 1.4 | Reference to Title Standards in Real Estate Sales Contract |
| 2.1 | Period of Search |
| 2.2 | The Concept of the Chain of Title and its Relationship of the Rule of Record Notice and the Scope of the Title Searcher's Obligation |
| 2.3 | Effect of Recording Instruments Claiming an Interest in Real Estate |
| 2.4 | Wild Instruments: Instruments by Strangers to the Record Chain of Title |
| 2.4A | After Acquired Property |
| 2.5 | Priority of Conveyances |
| 2.6 | Time When a Conveyance is Considered as Properly "Recorded" |
| 2.7 | Record of Expired Leases or Expired Interests |
| 4.1 | Limitation on the Use by Grantor of Corrective Deeds |
| 6.1 | Grantors |
| 6.2 | Majority |

© Vermont Bar Association  2010 All Rights Reserved
Reprinted with permission

| <u>Standard</u> | <u>Title</u> |
|---|---|
| 6.3 | Mental Capacity |
| 6.4 | Marital Interests |
| 6.5 | Powers of Attorney |
| 7.1 | Grantees |
| 8.1 | Name Variances |
| 9.1 | Execution, Witnessing and Acknowledgement |
| 11.1 | Delivery |
| 13.1 | Conveyance by Heirs' Deed |
| 13.2 | Conveyance by Devisees in Lieu of Probate Administration |
| 13.3 | Omitted Real Estate or Faulty Description of Closed Estate |
| 13.4 | Conveyance by Trustee of Inter Vivos Trust |
| 14.1 | Conveyance to Two or More Persons |
| 15.1 | Deeds Retaining Life Estates with Reserved Powers |
| 18.1 | Discharges of Mortgages |
| 18.2 | Irregularities and Discrepancies in Discharges of Mortgages and Other Documents |
| 18.3 | Discharges of Corrected, Re-Recorded or Modified Mortgages |
| 18.4 | Effect of Failure to Discharge Assignments of Leases and/or Rent, Riders or Financing Statements |

© Vermont Bar Association  2010 All Rights Reserved
Reprinted with permission

| Standard | Title |
|---|---|
| 18.5 | Discharges Involving Mortgage Electronic Registration System (MERS) |
| 19.1 | Tax Collector's Deed |
| 20.1 | Presumptions Applicable to Corporate Conveyances |
| 22.1 | Limited Liability Companies |
| 23.1 | Federal General Tax Lien |
| 24.1 | Federal Special Estate Tax Lien |
| 25.1 | Federal Special Gift Tax Lien |
| 27.1 | Vermont Estate Tax Lien |
| 28.1 | Establishing Marketable Title To Interests In Real Property Owned By Failed Financial Institutions |
| 28.2 | Title of the Receiver of a Failed Financial Institution to the Assets of That Institution |
| 28.3 | Title of the Immediate Transferee of the Receiver Of a Failed Financial Institution |
| 28.4 | Marketability of Title In a Real Estate Interest of a Failed Financial Institution for Which No Conveyance, Transfer or Assignment Appears of Record Prior to the Dissolution of the Bridge Institution Which Had Continued The Business of the Failed Institution |
| 28.5 | Discharges, Partial Releases, Assignments and Foreclosure of Mortgages of a Failed Institution By a Transferee of the Receiver For Such Failed Institution |

© Vermont Bar Association  2010 All Rights Reserved
Reprinted with permission

# CHAPTER II
## USE AND OPERATION OF THE LAND RECORDS

### STANDARD 2.1

* * * * *

### PERIOD OF SEARCH

A Title Search covering a period to an instrument recorded at least 40 years is sufficient for a title purview of the Marketable Record Title Act (27 V.S.A., Ch 5), provided that the basis thereof is a deed, a deed under some governmental authority, a probate proceeding in which the property is reasonably identified or described, a mortgage deed subsequently foreclosed, or any other instrument which shows of record reasonable probability of title and possession thereunder, provided further, that none of the title instruments within that period actually searched discloses any title defects or outstanding interests in third parties, in which case, the search should be extended beyond the 40-year period in order to determine the existence and validity of such defects or interests at the time of the search.

_____

**Comment 1.**   Quit Claim deeds have been commonly used as an instrument of conveyance throughout the history of conveyancing in Vermont, and therefore may serve as the root deed of a search.  Nevertheless, the title examiner should be aware that a Quit Claim deed is also used as an instrument of release and does not therefore necessarily purport to convey any interest whatsoever.  The examiner should be conscious of the circumstances surrounding the Quit Claim deed apparent from the records  and must understand that it may be appropriate to continue the search to an earlier deed if the circumstances warrant.

© Vermont Bar Association  2010 All Rights Reserved
Reprinted with permission

## STANDARD 2.2

\* \* \* \* \*

## THE CONCEPT OF THE CHAIN OF TITLE AND ITS RELATIONSHIP
## TO THE RULE OF RECORD NOTICE AND
## THE SCOPE OF THE TITLE SEARCHER'S OBLIGATION

The "Chain of Title" concept is a principle of common law, developed to protect subsequent parties from being charged with constructive notice of the contents of those recorded instruments which a title searcher would not be expected to discover by the customary search of the general grantor-grantee indices and other appropriate indices and diligent inquiry of the Town Clerk as to matters left for recording, but not indexed. Notwithstanding the holding of *Haner v. Bruce* (146 Vt. 262), it is not reasonable or customary to examine the indices of the individual record books, where a general index is maintained.  This concept limits the duties and liability of a title examiner, to a search of those documents which appear not only in the appropriate land record indices, but also in the chain of title to the particular parcel being searched. A subsequent party in the chain of title will not be charged with notice of an instrument which is outside the chain of title.

---

**Comment 1.**   The term "recorded instruments" includes, but is not limited to, deeds, leases, decrees, liens, judgments, maps, documents imposing covenants, restrictions or easements on property, agreements adjusting boundaries and all other documents by which an interest in real property may be transferred or claimed.

**Comment 2.**   The "chain of title" concept makes it clear that neither contractual duty nor the duty to use reasonable care encompasses the duty of examining the land records at large, but only those which appear in the particular chain of title. This concept, at one and the same time, serves as a guide- line to determine the extent of the burden which will be imposed upon a title examiner as well as the extent of the examiner's responsibility to the client.  The examiner is required to search for, and thus be responsible for, those recorded instruments which are within the chain of title to a particular parcel. As regards those recorded instruments which are considered outside of this chain of title, the title examiner need not search for, nor is the title examiner accountable to the client for their existence on the land records.

**Comment 3.**   Generally speaking, the period of constructive notice from the land records, and therefore the period of the title search, extends to a particular owner from the date such owner acquires title (not the date on which the transfer is recorded) to the date

© Vermont Bar Association  2010 All Rights Reserved
Reprinted with permission

of the recording of a conveyance divesting the owner of the interest being examined. In this respect, such record notice and period of title search are corollary terms, the period of both being synonymous. If, after the recording of a deed from an owner, another deed is subsequently recorded from that same person to a different grantee (whether the date thereof is earlier or later is immaterial), a purchaser from the first grantee is not charged with constructive record notice of the second grantee's conveyance, though it is on record when the title is searched. This principle has general application in the case of two successive deeds from the same grantor, both deeds recorded in the order of their execution. A party thereafter purchasing from the first grantee is not charged with notice by reason of the record then existing of the second deed. This principle will also control the required period of search when the first of two deeds has been the last to be recorded.

**Comment 4.**   Any instrument which does not provide notice of the interest claimed because the instrument is outside the chain of title is effective against subsequent parties in the chain of title who acquire actual notice of the existence of such instrument.

**Comment 5.**   "Springing liens" are an exception to the general rule.  Federal liens, Vermont tax liens (and those liens which purport to have the same effect as such liens) and judgment liens recorded against a person who does not own an interest in real estate at the time of the recording of such lien will attach by operation of law to any interest acquired subsequent to the recording of the lien for the effective term of the lien.  The title examiner must search outside the traditional chain of title to find these liens. The recommended period of search for these liens is back twenty years from the date of the search. The title examiner must check for liens filed against each person who had title to the property being searched back for the full twenty year period.  The title examiner should also check the name of the client, if the client is acquiring the property being examined.

**Comment 6.**   Where an owner divides a tract of land, and, in conveying one portion of it, creates in favor of that grantee an easement or other right or interest over the portion retained, subsequent purchasers of such retained portion are charged with constructive notice of the existence of such easement or other right or interest, because the first recorded deed, even though conveying other land, is in the chain of title to the common grantor's remaining land. Therefore, the lack of actual notice or knowledge on the part of the subsequent purchaser to the existence of the easement or the fact that the deed stated that remaining property was free and clear of all encumbrances, are all immaterial.

**Comment 7.**   Because of these rules, the concept of chain of title and the corresponding duty of a title examiner, are not limited to transactions which involve the same land in which an interest is then being acquired but can and do extend to those transactions of the same grantor but involving other land.

© Vermont Bar Association  2010 All Rights Reserved
Reprinted with permission

**Comment 8.**   There is an additional circumstance which the title examiner must consider.  It is derived from the rule of law announced in the line of cases that includes *Clearwater Realty Company v. Bouchard,* 146 Vt. 359 (1985), *Crabbe & Sweeney v. Veve Associates*, 150 Vt. 53 (1988), and *Lalonde v. Renaud*, 157 Vt. 281 (1989) and the applicable provisions of the Vermont Marketable Title Act.  The rule of law in the *Clearwater* line of cases may be stated concisely as -- rights of way, easements, and the designation of areas as common space on a recorded plan used as the basis of the description in connection with the conveyance of one or more of the lots shown on the plan vests rights in the grantee and the grantee's successors in title rights in those areas designated on the plan as rights of way, easements, and common space.  In deciding the Clearwater line of cases, the issue of the provisions of the Marketable Title Act has not arisen. The provisions of 27 V.S.A. 604 exempt easements granted, reserved or retained in a deed from the provisions of the Marketable Title Act that would otherwise extinguish such rights, and therefore the rights of way shown on very old plans that are outside the chain of title may still be encumbrances on the title.

**Comment 9.**   The term "other appropriate indices" as used in this title standard includes the general grantor-grantee index (but does not include the indices of the individual record books), lien index, road record books, index of discharged instruments if kept separately, and the uniform commercial code financing statement index.

## History

**March 29, 2000 -**   Comment 4 -- Removed the word "constructive" before "notice" in the first line.

Comment 5 -- Removed the reference to "Department of Tax" and replaced with tax lien; changed capitalization of phrase "Judgment Lien" to lower case.

Comment 8 – Changed capitalization of word "Rights" in right of way.

Comment 9 – Revised beginning of parenthetical to read "but does not include"

© Vermont Bar Association  2010 All Rights Reserved
Reprinted with permission

## STANDARD 2.3

\* \* \* \* \*

## EFFECT OF THE RECORDING OF INSTRUMENTS
## CLAIMING AN INTEREST IN REAL ESTATE

When an instrument is recorded which claims an interest in real estate and the claim is one which is authorized by law, then the examiner is on inquiry notice to determine the basis of the claim and the impact of the claim on the title to the interest being searched. If, however, the claim is one not authorized by law, then the recorded notice of the claim is not effective to encumber title to the property in which the interest is claimed.

_____

**Comment 1.**    Certain claims by strangers to the chain of title are authorized by law such as a notice of claim under 27 V.S.A. 605, mechanics liens (9 V.S.A. Chap. 51); judgment liens (12 V.S.A. Chap. 113); pre-judgment attachments (12 V.S.A. Chap. 123 and V.R. Civ. P. 4.1); and, a claim of adverse possession documented in the land records.

**Comment 2.**    Claims not authorized by law such as a non-judicial attachment or lis pendens, a real estate listing agreement, or a lien for fuel oil filed by the supplier to the owner not otherwise authorized by 9 V.S.A. Chap. 51 (mechanics liens) are not sufficient to put the title examiner on inquiry notice of the matters stated therein.

**Comment 3.**    If the record discloses a recorded Purchase and Sale Agreement or Deposit Receipt and Sales Agreement and there does not appear of record an instrument conveying the title to the property interest subject to such Agreement to the purchaser/buyer named in the Agreement, the title examiner should not assume that such Agreement is unenforceable.  Such an agreement may result in an encumbrance on the title. *Hemingway v. Shatney*, 152 Vt. 600 (1989).  See *Colony Park Associates v. Gall et al.*, 154 Vt. 1 (1990).

### History

**March 29, 2000**        Comment 4. -- Removed.

**© Vermont Bar Association  2010 All Rights Reserved**
**Reprinted with permission**

# CHAPTER XVIII

## STANDARD 18.1

\* \* \* \* \*

## DISCHARGES OF MORTGAGES

Mortgages may be discharged by any of the following methods:

1.  By entry on the margin of the record of the mortgage executed by the mortgagee and witnessed by the town clerk;
2.  By acknowledgement of payment by the mortgagee of record by entry on the mortgage deed and witnessed;
3.  By separate instrument executed and acknowledged by the mortgagee of record;
4.  By licensed attorney pursuant to affidavit per 27 VSA §464a;
5.  By deed of (re)conveyance by the mortgagee to the current record title holder; or
6.  By deed executed or joined in by the mortgagee, provided the joinder is for the express purpose of discharging the mortgage.

_____

**Comment 1:** Vermont is a title theory state. The granting of a mortgage is a conveyance of legal title by the mortgagor to the mortgagee subject to the mortgagor's right to redeem.

**Comment 2**: Normally, a discharge executed by a mortgagee merely evidences a record termination of the security interest, which has already occurred by operation of law as a result of the payment of the debt. Whatever extinguishes the debt, discharges the mortgage. *Island Pond Natl Bank v. Lacroix*, 104 Vt. 282 (1932). Once the debt has been satisfied, there is no longer any outstanding mortgage which could be enforced, whether or not it has been formally discharged. *Nash* v. *Kelley*, 50 Vt. 425, 430. However, payment of the mortgage debt is a factual issue, and, absent a discharge of mortgage executed and delivered by the holder of the mortgage, the mortgage must be judicially terminated if the mortgage is to be discharged of record. In order to make the title marketable, a discharge of the mortgage should be secured and recorded.

**Copyright © Vermont Bar Association 2010 All Rights Reserved**
**Reprinted with permission**

**Comment 3.** See 12 VSA §502 for the 15 year statute of limitations for the re-entry of land. See also *Huntington v. McCarty*, 174 Vt. 69 (2000).


**Comment 4.** Where a Certificate of Redemption is filed in a foreclosure action, no discharge is required.  The Certificate of Redemption is conclusive evidence of satisfaction of the conditions of the mortgage.


**Comment 5.** Where there is a Deed in Lieu of Foreclosure in the chain of title, there is no need to obtain a discharge of any mortgage(s) in which (1) the grantor of the deed in lieu of foreclosure is the then current owner of record title and (2) the grantee of the deed in lieu is the record holder of the mortgage at the time of the deed in lieu; and the deed in lieu of foreclosure does not preserve the separation of legal and equitable title.


**Comment 6.**  See title standard 18.2 regarding errors in the form of the discharge.


**Comment 7.** See 27 V.S.A. §470 for curative provisions for defective discharges.


### History

**September 26, 2008**  This standard was added.

**Copyright © Vermont Bar Association 2010 All Rights Reserved**
**Reprinted with permission**

# STANDARD 18.2

\* \* \* \* \*

## IRREGULARITIES AND DISCREPANCIES IN  DISCHARGES OF MORTGAGES AND OTHER DOCUMENTS

A discharge of a mortgage is sufficient, notwithstanding error in dates, amounts, volume and page or record, property descriptions, names of parties and other information, if, considering all circumstances of record, sufficient data are given to identify, with reasonable certainty, the mortgage sought to be discharged.

**Comment 1**.  Regardless of the number or type of errors in a discharge, if the searcher can determine from the instrument that a particular mortgage was intended to be discharged, the discharge should be deemed sufficient.

**Comment 2.** This standard presumes that the person executing the discharge of mortgage  is the holder of that mortgage at the time that the discharge is given. It often occurs, however, that the discharging party is not the mortgagee of record.  The usual reason for this situation is the absence of a  recorded assignment, or assignments, of the mortgage.  This Standard does not eliminate the necessity for a good chain of title  to the mortgage. While it is true that Standard 28.1 relaxes this requirement in the very special circumstances surrounding discharges of mortgages held by assignees of a receiver of a failed financial institution, the rule of that Standard cannot properly be expanded to eliminate the need for a proper recorded assignment of mortgage vesting title in the releasor.

**Comment 3.** The inadvertent reference in a discharge of mortgage to a mortgage modification agreement, rather than to the mortgage itself, falls within the purview of this standard, provided that the record discloses an adequate chain to permit the searcher to connect the modification to the mortgage sought to be discharged.

**Comment 4.**    See 27 V.S.A. §470 for curative provisions for defective discharges.

**Comment 5.**    Searchers may occasionally encounter a document purporting to be a "discharge of assignment of mortgage." The significance to be ascribed to such an instrument is a function of its true nature; the searcher must examine the underlying assignment to determine whether it is an *absolute* assignment of the mortgage, or merely a *collateral* assignment of that mortgage, i.e., an assignment given by the mortgagee to secure his own debt to a third person.

An *absolute* assignment of a mortgage is in reality a deed, transferring to the

Copyright © Vermont Bar Association 2010 All Rights Reserved
Reprinted with permission

assignee the legal title to the mortgaged premises, subject to the mortgagor's equity of redemption.  The assignee's purported discharge of such an assignment is no more effective than would be a grantee's discharge of a deed; in both instances, the "releasor" is ineffectively attempting to accomplish by a discharge a transfer that can only occur by means of a present conveyance.  Similarly, an attempted discharge of an *absolute* assignment by the assignor is void.  The occasionally encountered scenario involves an assignment of a mortgage by A to B. A then discovers that the mortgage should have been assigned to C, not B, and attempts to correct the problem by executing and recording a discharge of the assignment to B, followed by an assignment from A to C. Clearly, both the discharge and the subsequent assignment to C are of no effect, and title to the mortgage remains in B, who is the only party properly able to discharge the underlying mortgage.

A discharge of a *collateral* assignment of mortgage, although appropriate in most instances, presents an entirely different set of concerns.  A collateral assignment of a mortgage is, in essence, a mortgage of a mortgage.  For example, if A has given a mortgage to B to secure A's debt, B may assign A's mortgage to C to secure B's indebtedness to C. If B satisfies its debt to C, then C should reassign A's mortgage back to B, who again may foreclose if A defaults.  If C, rather than reassigning A's mortgage to B, purports to discharge B's assignment to C, this will be deemed to be a reassignment.  The searcher must take care to recognize, however, that such a discharge has no effect on the underlying mortgage, which still remains in effect. If, instead, the underlying mortgage is the instrument sought to be discharged, a discharge executed only by the mortgagee is inadequate; the collateral assignee must join in the discharge if the mortgage is to be fully discharged unless the collateral assignee has reassigned the mortgage to the mortgagee.

### History

**September 26, 2008**          This standard was added

**Copyright © Vermont Bar Association 2010 All Rights Reserved**
**Reprinted with permission**